JUL 22 2026 PM12:41
FILED - USDC - FLMD - ORL

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| MEHUL PATEL, | Civil Action No. 6:26-CV-1591-JSS-NWH |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF** |
| | **THE FAIR CREDIT REPORTING ACT** |
| v. | **15 U.S.C. § 1681s-2(b)** |
| JPMORGAN CHASE BANK, N.A., | **JURY TRIAL DEMANDED** |
| Defendant. | |

### COMPLAINT

COMES NOW the Plaintiff, MEHUL PATEL, *pro se*, and respectfully files this Complaint against Defendant JPMORGAN CHASE BANK, N.A. ("Chase" or "Defendant"), and alleges as follows:

### I. PRELIMINARY STATEMENT

1. This is a consumer-protection action brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA"), to redress the willful and negligent failure of Defendant, a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2, to conduct a reasonable investigation of disputes referred to it by the nationwide consumer reporting agencies ("CRAs") Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("TransUnion"), and to delete, modify, or block inaccurate, internally inconsistent, and materially misleading information that Defendant has continued to furnish about Plaintiff to those CRAs concerning a single credit-card account, reported by Chase as "JPMCB Card Services," ending in 8543 (the "Tradeline").

2. The data Chase furnishes on the Tradeline is facially irreconcilable. Chase reports to all three CRAs a current balance of $12,935 against its own reported credit limit of $12,000

— a mathematical over-limit condition of approximately 108 percent utilization that Equifax itself renders as negative $935 in "available credit." Chase simultaneously reports three mutually inconsistent delinquency chronologies to the three CRAs, a delinquency grid that skips the 30-day bucket entirely, and past-due amounts that range on the very same March 20, 2026 furnishing date from $440 (TransUnion and Experian) to the entire $12,935 balance (Equifax). These inconsistencies on their face overstate Plaintiff's credit utilization and misstate the severity and chronology of the alleged delinquency, materially depressing every credit score derived from Plaintiff's consumer files and causing ongoing actual damages. *See* Exs. A–C (April 2026 tri-bureau disclosures).

3. Chase's reinvestigation was a sham, and the dispute results prove it on their face. TransUnion's May 4, 2026 investigation results state that the disputed information was "VERIFIED AS ACCURATE; however, other information has also changed," disclosing that Chase simultaneously updated the "Original Charge-Off" and "Historical Trended Data" fields of the very tradeline it purported to verify — while the balance rose, the pay status jumped from 90 to 120 days, the past-due amount rose from $440 to $608, and a previously unreported March 21, 2026 closure date appeared. Ex. E (TU results, May 4, 2026). Equifax's May 8, 2026 results concluded that "the disputed information should be updated," yet changed nothing material — except to silently shift the delinquency ratings forward by one month. Ex. F (Equifax results, May 8, 2026, Confirmation No. 6120523169). Experian's May 26, 2026 results report the item "updated" with a third, different set of figures. Ex. G (Experian results, May 26, 2026, Report No. 1192-8325-52). Silently altering fields while "verifying" disputed data is definitive proof that Chase accessed its account-level records but did not address the substance of Plaintiff's disputes.

4. Plaintiff seeks actual damages, statutory damages of up to $1,000 per willful violation, punitive damages, and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

## II. JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction under 15 U.S.C. § 1681p, which provides that an action to enforce liability under the FCRA "may be brought in any appropriate United States district court, without regard to the amount in controversy," and under 28 U.S.C. § 1331 (federal question).

6.     Supplemental jurisdiction over any related state-law claims would lie under 28 U.S.C. § 1367.

7.   Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District. Plaintiff resides and received the inaccurate credit reports in Seminole County, Florida, which lies within the Orlando Division of the Middle District of Florida.

8.     Defendant regularly transacts business in this District by issuing credit, soliciting consumers, and furnishing information about consumers residing in this District to the CRAs.

### III.  PARTIES

9.   Plaintiff Mehul Patel is a natural person, a "consumer" as defined by 15 U.S.C. § 1681a(c), and a resident of Seminole County, Florida, residing at 1304 Swift Creek Way, Winter Springs, Florida 32708.

10.    Defendant JPMorgan Chase Bank, N.A., which reports to the CRAs as "JPMCB Card Services" and "JPMCB Card," is a national banking association organized under the laws of the United States, with its main office in Columbus, Ohio, and a card-services mailing address at P.O. Box 15369, Wilmington, Delaware 19850-5369. Chase regularly furnishes information to one or more nationwide CRAs and is therefore a "furnisher" subject to 15 U.S.C. § 1681s-2.

11.    Although Chase denominates the Tradeline a "business credit card," Chase furnishes the Tradeline to Plaintiff's individual consumer files at all three nationwide CRAs, reports Plaintiff's responsibility on the account as "Individual," and annotates the account "BUSINESS ACCOUNT - PERSONAL GUARANTEE." The information Chase furnishes is

accordingly information bearing on Plaintiff's personal credit worthiness, credit standing, and credit capacity within the meaning of 15 U.S.C. § 1681a(d), appears in consumer reports issued about Plaintiff personally, and is used by prospective lenders in consumer credit decisions concerning Plaintiff. The accuracy of that furnishing is therefore governed by the FCRA.

## IV.  STATUTORY FRAMEWORK AND CONTROLLING LAW

12.    The FCRA was enacted to ensure "fair and accurate credit reporting," 15 U.S.C. § 1681(a)(1), and is to be liberally construed in favor of the consumer it was designed to protect. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

13.    The Supreme Court has confirmed that consumers possess a concrete Article III interest in the accuracy of their credit files, and that the dissemination of inaccurate credit information is precisely the kind of harm the FCRA was designed to remedy. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432–33 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341–42 (2016).

14.    Under 15 U.S.C. § 1681s-2(b), once a furnisher receives notice of a consumer dispute from a CRA pursuant to § 1681i(a)(2), the furnisher must: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the CRA; (C) report the results of the investigation to the CRA; (D) if the investigation finds the information is incomplete or inaccurate, report those results to all other CRAs to which it furnished the information; and (E) modify, delete, or permanently block the reporting of any information that is found to be inaccurate or incomplete, or that cannot be verified.

15.    The Eleventh Circuit has expressly recognized that consumers have a private right of action against furnishers for violations of § 1681s-2(b). *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018); *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1301–02 (11th Cir. 2016).

16.    The investigation a furnisher conducts under § 1681s-2(b) must be a reasonable one. A furnisher does not satisfy its statutory duty by performing a perfunctory, rote review or by simply re-verifying what it previously reported; where its own records are inadequate to verify accuracy, the furnisher must "seek out and consider information from sources other than the consumer and the CRA." *Hinkle*, 827 F.3d at 1302; *see also Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 430–31 (4th Cir. 2004).

17.    Reporting information that is "technically true" but misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions is just as actionable under the FCRA as reporting facially false information. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944–45 (11th Cir. 2021); *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008); *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998).

18.    The reasonableness of a furnisher's investigation is ordinarily a question of fact for the jury. *Hinkle*, 827 F.3d at 1303; *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009).

19.    A violation of § 1681s-2(b) is "willful" for purposes of 15 U.S.C. § 1681n where the furnisher acts in knowing or reckless disregard of its statutory obligations. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–58, 68–71 (2007). Reckless disregard is established where the furnisher's reading of the statute or interpretation of its duties "runs a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

## V.  FACTUAL ALLEGATIONS

### A.  *Plaintiff's Credit Files and Disputes*

20.    On or about April 6 and 7, 2026, Plaintiff obtained current consumer disclosures from each of the three nationwide CRAs: an Equifax disclosure dated April 6, 2026 (**Ex. A**); a TransUnion disclosure, File No. 468051171, dated April 7, 2026 (**Ex. B**); and an Experian disclosure generated April 6, 2026, Report No. 3124-4234-44 (**Ex. C**).

21.    Each of the three disclosures contained a derogatory tradeline furnished by Chase under the names "JPMCB Card Services" and "JPMCB Card," reported under masked account numbers ending 8543 (Equifax) and beginning 424631 (TransUnion and Experian), all referring to the same account (the "Tradeline"). Exs. A–C.

22.    On or about April 6, 2026, Plaintiff disputed the Tradeline in writing with each of Equifax, Experian, and TransUnion. **Ex. D** (April 6, 2026 dispute letters to Equifax, TransUnion, and Experian). Each dispute identified the Tradeline with specificity; disputed the accuracy and completeness of the reported balances, dates, status codes, payment history, and past-due amounts, and the furnisher's ability to verify the information as reported; enclosed copies of Plaintiff's identification, proof of address, and the marked report pages; and demanded reinvestigation under 15 U.S.C. § 1681i. Each dispute was submitted in writing by U.S. mail to the CRA's designated dispute address.

23.    The CRAs accepted Plaintiff's disputes and, on information and belief, forwarded them to Chase by way of an Automated Consumer Dispute Verification record through the e-OSCAR system, as required by 15 U.S.C. § 1681i(a)(2). That § 1681i(a)(2) notice triggered Chase's reinvestigation duty under § 1681s-2(b).

24.    On May 4, 2026, TransUnion issued its investigation results to Plaintiff (File No. 468051171). **Ex. E**. TransUnion's results state: "INVESTIGATION RESULTS - VERIFIED AS ACCURATE AND UPDATED: The disputed item(s) was verified as accurate; however, other information has also changed," and disclose as to the Tradeline that "the disputed information was VERIFIED AS ACCURATE; however, we updated: Original Charge-Off; Historical Trended Data." *Id.* As "verified," the Tradeline now reported a balance of $12,975 (previously $12,935), a pay status of "Account 120 Days Past Due" (previously "Account 90 Days Past Due"), an amount past due of $608 (previously $440), a high balance of $12,975, an "Original Charge-off" of $0, a "Maximum Delinquency of 120 days in 04/2026 for $608," a Date Closed of March 21, 2026 that had appeared nowhere in the April 7, 2026 disclosure (*compare* Ex. B), and the remark "CLOSED BY CREDIT GRANTOR." Ex. E.

25.    On May 8, 2026, Equifax issued its reinvestigation results to Plaintiff under Confirmation No. 6120523169, stating: "Our investigation concluded that the disputed information should be updated." **Ex. F.** Equifax's results set out the Tradeline as it stood when the dispute was received (Date Reported April 20, 2026) and after the investigation (Date Reported May 8, 2026). *Id.* The two versions are identical in every material field — balance $12,975; credit limit $12,000; high credit $12,975; status "Over 120 Days Past Due" (Narrative Code 262); amount past due $608; Date of First Delinquency January 13, 2026; Date Closed March 21, 2026; "Account Closed By Credit Grantor" (Narrative Code 065) — except that the delinquency ratings in the payment-history grid were silently shifted forward by one month: the pre-dispute grid rated February 2026 as 60 days and March 2026 as 90 days late, while the post-investigation grid rated March 2026 as 60 days and April 2026 as 90 days late. Ex. F. Nothing Plaintiff disputed was corrected.

26.    On or about May 26, 2026, Experian issued its dispute results to Plaintiff (Report No. 1192-8325-52), reporting that the Tradeline "was updated from our processing of your dispute in May 2026." **Ex. G.** As "updated," Experian reported the Tradeline with a status of "Closed. $777 past due as of Apr 2026," the comment "Account closed at credit grantor's request," a recent balance of $13,015 as of April 2026, a high balance of $13,015, a monthly payment of $170, and payment-history ratings of 60 days late in February 2026, 90 days late in March 2026, and 120 days late in April 2026. Ex. G.

### B. Facial and Documented Inaccuracies

27.    As of the April 6–7, 2026 disclosures — each reflecting data Chase furnished with a date reported or updated of March 20, 2026 — the three CRAs reported the Tradeline as follows (Exs. A–C):

| Field | Equifax (Apr. 6, 2026) [Ex. A] | TransUnion (Apr. 7, 2026) [Ex. B] | Experian (Apr. 6, 2026) [Ex. C] |
|---|---|---|---|
| Account number (masked) | XXXXXXXXXXXX8543 | 424631545596 (rem. digits masked) | 424631XXXXXXXXXX |
| Account / loan type | Revolving; "BUSINESS_CREDIT_CARD" | Revolving; "BUSINESS CREDIT CARD" | "Business Card" |
| Responsibility | Individual | Individual Account | Individual |

| Field | Equifax (Apr. 6, 2026) [Ex. A] | TransUnion (Apr. 7, 2026) [Ex. B] | Experian (Apr. 6, 2026) [Ex. C] |
|---|---|---|---|
| Comment / remark | "BUSINESS ACCOUNT - PERSONAL GUARANTEE" | — | "Potentially negative" |
| Date opened | Aug. 21, 2025 | 08/21/2025 | 08/21/2025 |
| Date reported / updated | Mar. 20, 2026 | 03/20/2026 | 03/20/2026 (balance) |
| Account status | "NOT_MORE_THAN_FOUR_PAYMENT_PAST_DUE" | "Account 90 Days Past Due" | "Open. $440 past due as of Mar 2026" |
| Balance | $12,935 | $12,935 | $12,935 |
| Credit limit | $12,000 | $12,000 (02/2026–03/2026) | $12,000 |
| Available credit / utilization | –$935 available; 108% utilization | — | — |
| Amount past due | Entire balance reported past due | $440 (03/2026); $272 (02/2026) | $440 (Mar. 2026) |
| High balance | — | $12,895 (02/2026); $12,935 (03/2026) | $12,935 (= balance) |
| Scheduled monthly payment | — | $169 | $169 |
| Date of last payment | — | 10/27/2025 | 10/27/2025 |
| Date of first delinquency | Jan. 13, 2026 | — | — |
| Payment-history grid | Months reviewed: 6 | Sept. 2025–Jan. 2026 unrated; 02/2026 = 60; 03/2026 = 90 | Jan. 2026 no rating; 02/2026 = 60; 03/2026 = 90 |
| Obsolescence / removal date | — | "Removed: 12/2032" | "Positive status by Oct 2032" |

28.    The Tradeline, as furnished by Chase, is facially and materially inaccurate, incomplete, internally inconsistent, and misleading in at least the following respects:

(a)    **Balance exceeds credit limit.** Chase reports to all three CRAs a current balance of $12,935 against a credit limit of $12,000 that Chase itself reports for the very same account, producing a reported credit utilization of approximately 108 percent — a figure Equifax's disclosure renders as negative $935 of "available credit." Exs. A–C. Reporting a balance in excess of the credit limit, without disclosure of the fees, over-limit accruals, or interest that supposedly produced it, is materially misleading because it artificially elevates the utilization variable used by every commercially significant credit-scoring model. *See Losch*, 995 F.3d at 944–45; *Saunders*, 526 F.3d at

148.

(b)    **Irreconcilable delinquency statuses across the CRAs from a single furnishing.** From the same March 20, 2026 data furnishing, TransUnion reports the account as "Account 90 Days Past Due" with $440 past due (Ex. B); Experian reports "Open. $440 past due as of Mar 2026" with a 90-day rating (Ex. C); and Equifax reports the status code "NOT_MORE_THAN_FOUR_PAYMENT_PAST_DUE" while its disclosure reflected the entire $12,935 balance as past due (Ex. A) — the very inconsistency Plaintiff identified in his April 6, 2026 disputes (Ex. D). The same underlying account cannot, on the same date, be 90 days past due in the amount of $440 and simultaneously past due for its entire balance. Internally inconsistent tradeline data is materially misleading. *See Cortez*, 617 F.3d at 707–09.

(c)    **Impossible delinquency progression.** The payment-history grids Chase furnished to TransUnion and Experian show no adverse rating of any kind through January 2026, then a 60-day delinquency rating in February 2026, followed by a 90-day rating in March 2026. Exs. B, C. A 60-day delinquency rating cannot arise in the first rated month without a preceding 30-day rating; the grid as furnished skips the 30-day bucket entirely. That progression is also irreconcilable with Chase's own reported payment data: Chase reports the date of last payment as October 27, 2025 on an account with scheduled monthly payments of $169, under which the first missed payment — and therefore the first 30-day delinquency — would have occurred in or about November or December 2025, months in which Chase furnished no delinquency rating at all.

(d)    **Mutually inconsistent dates of first delinquency and obsolescence chronologies.** Equifax reports a Date of First Delinquency of January 13, 2026. Ex. A. The 60-day rating Chase furnished to TransUnion and Experian for February 2026, however, implies a first delinquency in or about December 2025, and TransUnion's stated removal date of December 2032 corresponds to a delinquency commencing in or about December 2025 (Ex. B), while Experian states the account is "scheduled to go to

a positive status" by October 2032, implying a first delinquency in or about October 2025 (Ex. C). These three chronologies cannot all be accurate, and the Date of First Delinquency controls how long this derogatory account may lawfully remain on Plaintiff's consumer reports under 15 U.S.C. § 1681c(a)(4). *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997).

(e) **High balance equals balance.** Chase reports to Experian a "Highest Balance" of $12,935 — an amount identical to the current balance — and its high-balance history at TransUnion simply tracks the current balance month to month ($12,895 in February 2026; $12,935 in March 2026). Exs. B, C. A high-balance field that merely mirrors the current balance evidences recycled-field reporting rather than furnishing derived from actual account-level records.

29.    Plaintiff specifically disputed the foregoing inaccuracies in the April 6, 2026 disputes referenced in Paragraph 22 above, including the accuracy and completeness of the balances, dates, status codes, payment history, and past-due amounts as reported. Ex. D.

30.    Chase's responses to the § 1681i(a)(2) notices did not correct a single inaccuracy Plaintiff identified, and the dispute results themselves establish that Chase's reinvestigation was a sham. Following the reinvestigations, the three CRAs reported the Tradeline, per Chase's furnishing, as follows (Exs. E–G):

| Field | Equifax results (May 8, 2026; Conf. #6120523169) [Ex. F] | TransUnion results (May 4, 2026; File #468051171) [Ex. E] | Experian results (May 26, 2026; Report #1192-8325-52) [Ex. G] |
|---|---|---|---|
| Stated outcome | "the disputed information should be updated" | "VERIFIED AS ACCURATE; however, we updated: Original Charge-Off; Historical Trended Data" | "This item was updated from our processing of your dispute in May 2026" |
| Balance | $12,975 | $12,975 (Date Updated 04/20/2026) | $13,015 (Apr. 2026) |
| Credit limit | $12,000 | $12,000 | $12,000 (Feb.–Mar. 2026) |
| High credit / high balance | $12,975 | $12,975 | $13,015 |
| Account status | "Over 120 Days Past Due" (Narrative Code 262) | "Account 120 Days Past Due" | "Closed. $777 past due as of Apr 2026" |

| Field | Equifax results (May 8, 2026; Conf. #6120523169) [Ex. F] | TransUnion results (May 4, 2026; File #468051171) [Ex. E] | Experian results (May 26, 2026; Report #1192-8325-52) [Ex. G] |
|---|---|---|---|
| Amount past due | $608 | $608 | $777 |
| Scheduled monthly payment | $169 | $169 per month | $170 |
| Original charge-off | — | $0 | — |
| Date closed / closure remark | 03/21/2026; "Account Closed By Credit Grantor" (Code 065) | 03/21/2026; "CLOSED BY CREDIT GRANTOR" | Closed; "Account closed at credit grantor's request" |
| Date of first / maximum delinquency | Date of First Delinquency 01/13/2026 | "Max. Delinquency of 120 days in 04/2026 for $608" | — |
| Payment-history grid | Pre-dispute: Feb. 2026 = 60, Mar. 2026 = 90; post-investigation: Mar. 2026 = 60, Apr. 2026 = 90 | 02/2026 = 60; 03/2026 = 90; earlier months unrated | Feb. 2026 = 60; Mar. 2026 = 90; Apr. 2026 = 120 |
| Removal / obsolescence date | — | 12/2032 | — |

31.    The foregoing results demonstrate, on the face of the documents themselves, at least the following:

(a)    **Chase "verified" the Tradeline while silently altering it.** TransUnion's results expressly disclose that the disputed information was "verified as accurate; however, other information has also changed," and that the "Original Charge-Off" and "Historical Trended Data" fields were updated. Ex. E. Between the April 7, 2026 disclosure (Ex. B) and the May 4, 2026 "verification" (Ex. E), the balance rose from $12,935 to $12,975, the pay status jumped from "Account 90 Days Past Due" to "Account 120 Days Past Due," the past-due amount rose from $440 to $608, and a March 21, 2026 closure date that had appeared nowhere in the April disclosure was populated. A furnisher that alters the very fields it purports to verify has necessarily consulted its account-level records, yet failed to correct the inaccuracies the consumer identified — the hallmark of an unreasonable, rubber-stamp reinvestigation. *See Hinkle*, 827 F.3d at 1302; *Johnson*, 357 F.3d at 431; *Saunders*, 526 F.3d at 150.

- 11 -

(b)    **Equifax was told the data "should be updated," yet nothing was corrected — and the delinquency months were re-labeled.** Equifax's before-and-after blocks are identical in every material field; the only change was a silent one-month forward shift of the delinquency ratings (February 2026 = 60 / March 2026 = 90 before; March 2026 = 60 / April 2026 = 90 after). Ex. F. The post-investigation grid therefore contradicts both Equifax's own pre-dispute grid and the ratings Chase contemporaneously furnished to TransUnion and Experian for the very same months (which rate March 2026 as 90 days and April 2026 as 120 days). *Compare* Ex. F *with* Exs. E, G.

(c)    **The "verified" status is chronologically impossible.** Chase itself reports a Date of First Delinquency of January 13, 2026. Ex. F. Measured from that date, the account could have been at most approximately 97 days past due as of the April 20, 2026 "Date Reported" — yet Chase furnished, and "verified," a status of "Over 120 Days Past Due" (Equifax, Ex. F) and "Account 120 Days Past Due" (TransUnion, Ex. E), and Equifax's own payment-history grid never reports a 120-day rating at all. The Date of First Delinquency controls how long this account may lawfully remain on Plaintiff's reports under 15 U.S.C. § 1681c(a)(4). *See Cushman*, 115 F.3d at 226.

(d)    **The "verified" data still conflicts across the CRAs.** After the reinvestigations, the same account, per the same furnisher, is reported with a past-due amount of $608 (Equifax and TransUnion) versus $777 (Experian); a balance and high balance of $12,975 (Equifax and TransUnion) versus $13,015 (Experian); a scheduled monthly payment of $169 (Equifax and TransUnion) versus $170 (Experian); a March 2026 rating of 90 days (TransUnion and Experian) versus 60 days (Equifax post-investigation); and an April 2026 rating of 90 days (Equifax) versus 120 days (Experian and TransUnion's "maximum delinquency"). *Compare* Ex. E *with* Exs. F, G. *See Cortez*, 617 F.3d at 707–09.

(e)    **The balance still exceeds the credit limit — and keeps growing on a closed account.** Chase closed the account on March 21, 2026 (Exs. E–G), yet the balance it furnishes has continued to climb: $12,935 (March 20, 2026, Exs. A–C), $12,975 (April

20, 2026, Exs. E–F), and $13,015 (April 2026, per Experian, Ex. G), against the same $12,000 credit limit — a reported utilization of approximately 108 percent that rises month over month on an account on which no further credit can be extended.

(f) **Chase reported an already-closed account as open.** Chase closed the account at its own request on March 21, 2026 (Exs. E–G), yet the April 6–7, 2026 disclosures furnished by Chase reported no closure whatsoever: TransUnion listed no "Date Closed" and an open "Account 90 Days Past Due" status (Ex. B), and Experian reported the account "Open. $440 past due as of Mar 2026" (Ex. C). Reporting a closed, grantor-terminated account as an open trade is materially misleading. *See Losch*, 995 F.3d at 944–45; *Saunders*, 526 F.3d at 148–50.

32.     On or about July 18, 2026, Barclays Bank Delaware denied Plaintiff's request for the Frontier Airlines Credit Card. **Ex. H.** The denial letter states that the consumer reporting agency that provided information that influenced the decision in whole or in part was TransUnion, and identifies the following adverse reasons: "Serious delinquency," "Time since delinquency is too recent or unknown," "Recent delinquency indicated on credit bureau," "History of delinquency on your credit report," and that the "Proportion of balances to credit limits on bank/national revolving or other rev accounts is too high." *Id.*. Barclays also disclosed that it used a TransUnion credit score of 596 in making its decision. *Id.* This post-dispute adverse action is direct evidence that the delinquency and utilization information Chase continued to furnish after Plaintiff's disputes impaired Plaintiff's access to credit.

## C. Plaintiff's Damages

33.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual damages, including but not limited to:

(a)     materially depressed credit scores derived from the consumer files maintained by Equifax, Experian, and TransUnion, which depression is the proximate consequence of the inaccurate utilization and delinquency data Chase has furnished;

(b)    impairment of Plaintiff's ability to obtain credit and favorable credit terms from lenders relying on the inaccurate Tradeline, including the July 18, 2026 denial by Barclays Bank Delaware of Plaintiff's application for the Frontier Airlines Credit Card, which Barclays states was influenced in whole or in part by TransUnion information; Ex. H;

(c)    loss of the use and benefit of his good credit standing;

(d)    emotional distress, frustration, anxiety, and embarrassment, which are recoverable as actual damages under the FCRA, *see Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288 (11th Cir. 2019); *Losch*, 995 F.3d 937; and

(e)    out-of-pocket costs, including postage and mailing fees for the disputes (Ex. D), photocopy and printing expenses, and the time spent attempting to correct Defendant's inaccurate reporting; and

(f)    denial of credit by Barclays Bank Delaware on July 18, 2026, for reasons including serious delinquency, recent delinquency indicated on credit bureau, history of delinquency on Plaintiff's credit report, and high revolving utilization, based in whole or in part on TransUnion information and a TransUnion-based credit score of 596. Ex. H.

**COUNT I: NEGLIGENT VIOLATION OF 15 U.S.C. § 1681s-2(b)**

(Against JPMorgan Chase Bank, N.A.)

34.    Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

35.    Chase is a furnisher of information subject to 15 U.S.C. § 1681s-2.

36.    Plaintiff disputed the Tradeline with each of the three nationwide CRAs as described above (Ex. D), and the CRAs forwarded those disputes to Chase pursuant to 15 U.S.C. § 1681i(a)(2). *See Felts*, 893 F.3d at 1312.

37.    Upon receipt of the § 1681i(a)(2) notices, Chase was required under 15 U.S.C. § 1681s-2(b)(1)(A) through (E) to (i) conduct a reasonable investigation, (ii) review all relevant information provided by the CRAs, (iii) report the results of the investigation, (iv) report any inaccuracy to all other CRAs to which it furnished information, and (v) modify, delete, or block the inaccurate reporting. *Hinkle*, 827 F.3d at 1301–02.

38.    Chase negligently failed to conduct a reasonable investigation in that, among other things, it "verified" (a) a balance of $12,975 that exceeds its own reported credit limit of $12,000 and continues to grow on an account Chase itself closed on March 21, 2026 (Exs. E–G); (b) an "Over 120 Days Past Due" status that is chronologically impossible given the January 13, 2026 Date of First Delinquency Chase itself reports (Ex. F); (c) three mutually irreconcilable sets of post-investigation figures across the three CRAs — past-due amounts of $608 versus $777, balances of $12,975 versus $13,015, scheduled payments of $169 versus $170, and conflicting monthly delinquency ratings for March and April 2026 (Exs. E–G); (d) a delinquency progression that skips the 30-day bucket entirely and contradicts its own reported October 27, 2025 date of last payment (Exs. B, C); and (e) a high-balance field that merely mirrors the current balance (Exs. B, C) — all while simultaneously altering the "Original Charge-Off" and "Historical Trended Data" fields of the very tradeline it told TransUnion was "verified as accurate" (Ex. E), and re-labeling the delinquency months in the data it furnished to Equifax (Ex. F).

39.    Had Chase consulted its own account-level records — statements, payment histories, and internal delinquency logs — it could not reasonably have verified data that is mathematically and chronologically impossible on its face. Its verification of that data, while it contemporaneously updated other fields on the same tradeline, was the product of a perfunctory, rote review of the kind condemned in *Hinkle*, 827 F.3d at 1302, *Johnson*, 357 F.3d at 431, and *Saunders*, 526 F.3d at 150.

40.    The reasonableness of Chase's investigation is, at minimum, a question of fact for the jury. *Hinkle*, 827 F.3d at 1303; *Boggio*, 696 F.3d at 617; *Gorman*, 584 F.3d at 1157.

41.    As a direct and proximate result of Chase's negligent violation of § 1681s-2(b), Plaintiff has suffered the damages itemized in Paragraph 33 above.

42.    Plaintiff is entitled to actual damages and costs under 15 U.S.C. § 1681o(a).

### COUNT II: WILLFUL VIOLATION OF 15 U.S.C. § 1681s-2(b)

(Against JPMorgan Chase Bank, N.A.)

43.    Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

44.    Chase's conduct was willful within the meaning of 15 U.S.C. § 1681n in that it acted in knowing or reckless disregard of its statutory obligations under § 1681s-2(b). *Safeco*, 551 U.S. at 57–58, 68–71.

45.    Chase is a sophisticated national banking association that has repeatedly been subject to regulatory and judicial enforcement of the FCRA and is intimately familiar with the requirements of § 1681s-2(b), the Metro 2® Format, and the Consumer Data Industry Association's Credit Reporting Resource Guide, including the requirements that reported balances reconcile with reported credit limits and that delinquency ratings progress sequentially from the first missed payment.

46.    Notwithstanding that knowledge, Chase "verified" the disputed data while simultaneously altering other fields of the same tradeline — conduct disclosed on the face of TransUnion's May 4, 2026 results (Ex. E) — and has continued to report a balance exceeding its own credit limit, a chronologically impossible "Over 120 Days Past Due" status, and mutually inconsistent delinquency chronologies (Exs. E–G), even after being placed on specific written notice of the inaccuracies through Plaintiff's CRA disputes (Ex. D). That conduct establishes willfulness or, at minimum, reckless disregard under *Safeco*, 551 U.S. at 69.

47.    Plaintiff is entitled to actual damages or statutory damages of not less than $100 and not more than $1,000 per violation, punitive damages, and costs under 15 U.S.C. §

1681n(a). *Cushman*, 115 F.3d at 226–27.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against Defendant JPMorgan Chase Bank, N.A. and grant the following relief:

A.    Actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1) in an amount to be proven at trial;

B.    Statutory damages of not less than $100 and not more than $1,000 per willful violation under 15 U.S.C. § 1681n(a)(1)(A);

C.    Punitive damages under 15 U.S.C. § 1681n(a)(2);

D.    Costs of suit under 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2), together with reasonable attorney's fees should Plaintiff retain counsel;

E.    Pre-judgment and post-judgment interest at the maximum rate allowed by law;

F.    An order requiring Defendant to permanently correct or delete the inaccurate, incomplete, or unverifiable information identified herein; and

G.    Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: 22 JULY , 2026

Respectfully submitted,

MEHUL PATEL, *Pro Se*

- 17 -

1304 Swift Creek Way

Winter Springs, Florida 32708

Telephone: 321-368-2961

Email: Mehul8797patel@gmail.com

## VERIFICATION

I, Mehul Patel, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I have read the foregoing Complaint, that the factual allegations contained herein are true and correct to the best of my personal knowledge, information, and belief, and that the supporting documents referenced herein as Exhibits A through H are true and accurate copies of documents in my possession, namely: the Equifax disclosure dated April 6, 2026 (Ex. A); the TransUnion disclosure, File No. 468051171, dated April 7, 2026 (Ex. B); the Experian disclosure, Report No. 3124-4234-44, generated April 6, 2026 (Ex. C); my written disputes to each CRA dated April 6, 2026 (Ex. D); the TransUnion investigation results dated May 4, 2026, File No. 468051171 (Ex. E); the Equifax reinvestigation results dated May 8, 2026, Confirmation No. 6120523169 (Ex. F); the Experian dispute results, Report No. 1192-8325-52, dated May 26, 2026 (Ex. G); and the Barclays Bank Delaware adverse action / denial letter regarding Plaintiff's Frontier Airlines Credit Card request, Request ID PQ1801849, dated July 18, 2026 (Ex. H).

Executed this 22 day of JULY, 2026, in Winter Springs, Seminole County, Florida.

MEHUL PATEL